UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SITTO ENTERPRISES, INC.,
d/b/a WOODWARD & PALMER,
and NAZAR KINAYA a/k/a NEIL
KINAYA,

     Plaintiffs,

v.                                                                    Case No. 05-72893

BADGER MUTUAL                                  HONORABLE AVERN COHN
INSURANCE COMPANY,

     Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I. Introduction.

This is a breach of an insurance policy case. Sitto Enterprises, Inc. (Sitto) and

Nazar Kinaya (Kinaya) claim that defendant Badger Mutual Insurance Company

(Badger) has failed to pay for a loss resulting from fire damage to real and personal

property owned by Sitto[1] as provided under a policy issued by it.

Before the Court is Defendant's Motion for Summary Judgment. For the

following reasons, the motion is GRANTED.

### II. Background.[2]

_____

[1] Kinaya is apparently the sole stockholder of Sitto. All references will be to Sitto.

[2] The background is gleaned from the parties' papers.

The parties followed the Court's summary judgment motion practice guidelines
but for the following exceptions: neither party highlighted the relevant portions of

Sitto first took out a policy in 2000 with Badger insuring real and personal property, a liquor and convenience store, in Detroit, Michigan,.  The first policy was effective from April 16, 2000, to April 16, 2001.  The policy was renewed in 2001 and subsequent years, and continued in effect through 12:01 a.m. on April 16, 2005.

Under each policy, Sitto was required to pay the entire annual premium at renewal or on an installment basis during the year.[3]  If not paying the entire amount up front, Sitto needed to make the first installment payment on time to extend coverage another year.  According to the billing and payment history on the policies, plaintiff paid the interim installments late ten times.  On one occasion Badger sent Sitto a notice of its intent to cancel the policy for failure to timely pay; the premium was received shortly thereafter and the policy was not cancelled.

Sitto never made the first installment payment on a new policy after the due date.  However, due to Badger's billing practices, Sitto never had to pay the renewal premium by April 16 of each year.  The annual renewal payment due date was not always the 16th of April.  Rather, Badger gave renewing policyholders 11 days to make the renewal payment from the time it sent a Renewal Reminder Notice, which it sent at varied times.

In January, 2005, Badger asked Sitto whether it wanted to renew the policy; Sitto indicated the intent to renew with the same coverage as the prior year.  In late-March or

---

exhibits and Badger filed a statement of material facts not in dispute with its reply brief.  For the Court's motion practice guidelines, <u>see</u> http://www.mied.uscourts.gov/_practices/Cohn/motion/htm.

[3] A policyholder had the option of paying in full up front, or making installment payments throughout the year.  Plaintiffs always chose the five-installment payment plan.

2

early-April, 2005, Sitto received a Renewal Offer[4] from Badger and noticed that the

yearly premium had increased $2,000.  Badger says the document warned that the

policy would expire on April 16, 2005, unless the premium payment was received by

April 15, 2005.  Kinaya says he called his agent about the premium increase; the agent

said he would look into it.  Kinaya then set the bill aside.

Badger sent Sitto a Renewal Reminder Notice on April 5, 2005, which warned

that "ALL COVERAGE WILL END" unless payment was received on or before April 16,

2005.

On April 18, 2005, Kinaya realized that his agent did not call back about the

premium increase.  He decided to make the initial installment payment.  Kinaya says

based on prior experience, it never occurred to him that sending in the payment after

April 16 would jeopardize coverage.  On April 18, 2005, Kinaya wrote the check and

placed it in a pile for mail pickup.  On April 21, 2005, Kinaya noticed that the pile of mail

had not been picked up, so he took it to the post office for mailing.

Badger received the payment on April 25, 2005.  In the early morning hours of

April 26, 2005, a fire destroyed the insured real and personal property.  Kinaya reported

the fire to Badger at an unknown date.  Also on April 26, 2005, Badger sent a letter to

Sitto returning the premium payment and stating that the failure to renew the policy prior

to its expiration date caused the policy to expire on April 16, 2005.  On or about May 25,

2005, Badger denied Sitto's claim.

Plaintiffs filed suit on July 22, 2005.

---

[4] Plaintiffs call the document a new insurance policy; Badger calls this document
a renewal offer.

### III. Discussion

### A. Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994)

4

(quoting <u>Anderson</u>, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party."  <u>Employers Ins. of Wausau v. Petroleum Specialties, Inc.</u>, 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  <u>Thompson v. Ashe</u>, 250 F.3d 399, 405 (6th Cir. 2001).

**B. Analysis.**

**1.  Introduction.**

Badger makes two arguments as to why summary judgment is appropriate.  First, Badger says no reasonable fact finder could find that a policy was in effect when Sitto suffered the loss, and that a cancellation notice was not required.  Second, Badger says equitable estoppel does not bar it from terminating the policy for failing to pay the initial installment by the due date.  Sitto says that a cancellation notice was required to terminate coverage, and that equitable estoppel bars Badger from cancelling coverage due to the late payment of the initial installment on renewal.

**2.  Whether a Policy was in Effect on the Date of Loss.**

**a.  Badger's Argument.**

Badger says the following undisputed facts establish that no rational trier of fact could find that a policy was in effect when the loss occurred on April 26, 2005:

•      the 2004 policy stated it was in effect until 12:01 a.m. on April 16, 2005;

•      the Renewal Offer sent on March 23, 2005, stated that coverage expired on April 16, 2005, unless the renewal premium was received by April 15, 2005;

• the Renewal Reminder Notice sent on April 5, 2005, said coverage expired at 12:01 a.m. on April 16, 2005, unless the renewal premium was received by April 16, 2005;

• Badger did not receive the renewal premium by April 16, 2005;

• Plaintiffs' untimely payment was not accepted by Badger and was mailed to Sitto on April 26, 2005.

Badger argues that the policy expired by its own terms.  Badger also argues that, under Michigan law, a notice of cancellation is not required to terminate coverage when a policy expires because the insured failed to pay the premium by the due date.  Eghotz v. Creech, 365 Mich. 527 (1962); McCormic v. Auto Club Ins. Ass'n., 202 Mich. App. 233 (1993).  "Failure by the insured to pay the required renewal premium means that the insured declined the insurer's offer of renewal, and the policy automatically terminated at the end of the policy term."  McCormic, 202 Mich. App. at 239-40.

### b.  Plaintiffs' Argument.

Sitto says the policy required a cancellation notice to terminate coverage, and that none was sent.  The policy states that "[i]f we cancel this policy for nonpayment of premium, we will give you notice at least ten days before the cancellation is effective."  Sitto argues that it is ambiguous whether this provision applies to both interim installment payments and initial installment payments on renewal, and that ambiguous provisions must be construed in its favor.  Hagerl v. Auto Club Group Ins. Co., 157 Mich. App. 684 (1987).  Also, each case cited by Badger, Sitto says, included an insurance policy with a specific nonrenewal clauses.  For example, policy language in McCormic stated that "[f]ailure to pay the required renewal premium means that our offer to renew has been declined."  202 Mich. App. at 236.  Plaintiffs say that there is no

6

similar language in the 2004 policy, meaning a cancellation notice was required under the policy's terms.

### c.  Badger's Reply.

Badger says the absence of a nonrenewal clause is not determinative under Michigan law, and the conclusion that no cancellation notice is required if a policy has expired on its own terms has been upheld even when nonrenewal clauses are absent. Wynn v. Farmers Ins. Group, 98 Mich. App. 93 (1980); Watts v. Michigan Basic Property Ins. Ass'n, 2003 WL 22798950 (Mich. App., November 25, 2003) (unpublished).  Badger says the ambiguity in Hagerl is not present in this case.

### d.  Resolution.

A cancellation notice is not required to terminate insurance coverage at the natural end of the terms of an insurance policy.  McCormic, 202 Mich. App. at 239-40. The term in the 2004 policy requiring a cancellation notice applies to late installment payments, not the payment of a subsequent policy renewal.  The 2004 policy's terms did not govern the date payments were to be due on a possible 2005 policy.  All of the payments on the 2004 policy had been paid, and the 2004 policy expired at a fixed date. The policy was not ambiguous as to this provision; the policy clearly stated how long it was in effect.  Moreover, Sitto had already received the Renewal Offer at the end of March, and the Renewal Reminder Notice in early April.  Both documents warned that coverage would expire at 12:01 a.m. on April 16, 2005.  Under the policy's terms and the surrounding circumstances, no cancellation notice was required.

### 3.  Whether Equitable Estoppel Applies.

7

**a.  Legal Standard.**

Equitable estoppel applies when a plaintiff establishes (1) that acts or representation of defendant induced it to believe that an insurance policy was in effect at the time of a loss, (2) that plaintiff justifiably relied upon this belief, and (3) that plaintiff was prejudiced as a result of their belief that the policy was still in effect. Morales v. Auto-Owners Ins. Co., 458 Mich. 288, 296-97 (1998).  The discussion above resolved whether the policy was in effect at the time of the loss.  Badger's argument here challenges whether Sitto was justified in believing a policy was in effect at the time of the loss.

**b.  Badger's Argument.**

Badger argues that no reasonable fact-finder could find that Sitto justifiably believed that it had insurance coverage at the time of the loss.  Badger says it only accepted late interim installment payments, not late initial installment payments on renewal.  Until April, 2005, Badger notes that Sitto had paid the renewal installment payment required to renew coverage on or before the due date specified in the Renewal Reminder Notices.  The reason Badger had previously accepted renewal payments after April 16 of the renewing year was because, in every previous year, the 11-day payment period dictated this result based on the date the Renewal Reminder Notice was sent.

The relevant dates are:

| Year | Renewal Reminder Notice Sent | Renewal Premium Due | Date Received |
|------|------------------------------|---------------------|---------------|
| 2001 | April 12, 2001 | April 23, 2001 | April 18, 2001 |
| 2002 | April 8, 2002 | April 19, 2002 | April 17, 2002 |

8

| 2003 | April 14, 2003 | April 25, 2003 | April 21, 2003 |
| 2004 | April 11, 2004 | April 22, 2004 | April 20, 2004 |

Badger says the distinction between acceptance of a late installment payment and a late renewal premium payments is critical.  Badger cites cases from other states for the proposition that insurers can contest the validity of a policy due to an insured's untimely renewal premium payment even though the insurer had previously accepted late mid-term premium payments.  See Sereno v. Lumbermens Mut. Ca. Co., 132 Ariz. 546 (1982); Danebrock v. Memphis Fire Ins. Co., 1986 Tenn. App. LEXIS 3341 (1986); Unruh v. Prudential Property & Cas. Ins. Co., 43 F. Supp. 2d 1237 (D. Kan. 1999). Badger says applying the rulings in these cases to the Morales test, no reasonable fact-finder could find that Sitto reasonably relied on Badger's acceptance of late mid-term premium installment payments as an indication that Badger would disregard the plain language of the renewal notices and continue coverage even if the renewal premium was paid after the specified due date.

Badger also distinguishes this case from Morales.  Badger says Morales involved an insurer that repeatedly accepted late renewal premium payments without any lapses in coverage, meaning the insured justifiably believed that his insurer would renew the policy for another term even if insured paid the renewal premium late.

### c.  Plaintiffs' Argument.

Sitto argues that a reasonable fact-finder could find that it justifiably relied upon Badger's prior conduct such that equitable estoppel prevents Badger's denial of coverage.  Sitto says it accepted Badger's offer to renew coverage in January, 2005, and subsequently relied on Badger's past practices of accepting late payments when it

9

sent in the renewal payment.  Sitto notes that Badger's citation to Arizona, Tennessee, and Kansas case law are not binding interpretations of Michigan law.  Sitto says none of the cases cited by Badger held that the failure to make a timely renewal payment precludes the application of equitable estoppel.  Also, each case cited by Badger involved an insurance policy with a nonrenewal clause and, Sitto says, the surrounding facts led to the rejection of equitable estoppel.

Sitto relies on Morales to establish the factual basis upon which equitable estoppel applies, and says this case is sufficiently similar.  Sitto says Morales does not distinguish between late installment and late renewal payments to determine whether equitable estoppel applies.  Morales involved a dispute arising out of the nonpayment of a renewal premium on a policy that contained a nonrenewal clause.  According to Sitto, the insured in Morales had not previously made late renewal payments.

Sitto also argues that Badger did not distinguish between renewal payments and installment payments in the policy or in its payment notices.  Sitto says renewal notices stated that the policy would "expire" if a timely payment was not made, whereas installment notices stated that the policy would "no longer be in force" in the event of an untimely payment.  Sitto says Badger's president said the purpose of both notices was to communicate that an untimely payment would result in there being no coverage.  Sitto argues that Badger's failure to distinguish between the types of nonpayment creates an ambiguity that should be construed in its favor.

Sitto distinguishes Sereno, upon which Badger relies, from this case.  In Sereno, the policy specifically distinguished between renewal and mid-term installment payments and the impact of failing to make payments on time.  The Sereno policy

10

stated that "If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer."  The court ruled that the insurer was not estopped from enforcing the clause even though it has previously accepted late interim installment payments.  Sitto says that the Renewal Reminder Notice does say the policy will expire if a renewal payment is made late, but notes that the mid-term payment notices contain similar language and were not enforced.  Sitto says the other cases upon which Badger relies have similar distinctions.

Sitto says that a question of fact exists as to whether it justifiably relied on Badger's past conduct relative to the treatment of late payments.  Sitto says the distinction between a renewal payment and an installment payment is a distinction without a difference to consumers, including Sitto.

### d.  Badger's Reply.

Badger says the 2005 Renewal Offer and Renewal Reminder Notice did not present Sitto with contradictory information, as the insured had been presented in Morales.

### e.  Resolution.

Whether Sitto justifiably relied on the belief that insurance coverage existed at the time of the loss requires an examination of the difference between a late interim installment payment and a late renewal payment.  This difference is integral to determining the outcome in this case.  Because of this difference, there is no genuine issue of material fact that Sitto unjustifiably relied on the belief that insurance coverage

11

continued because Badger had never previously accepted late initial installment payments on renewal.

Despite Sitto's argument, there is a difference between a late interim installment payment and a late initial payment on renewal for establishing equitable estoppel. An interim installment payment is a payment that continues a policy the insurer knows is in effect. Policy cancellation is possible for a late or unpaid interim installment payment; the policy is in effect until such cancellation occurs. An initial installment payment on renewal is different. Until the installment payment on renewal is made, an insurer does not know whether the insured needs or wants to continue coverage. The insured may have decided to get a policy through another carrier, or may have sold the insured property. Badger did not know what Sitto wanted, as it had not heard from it in almost four months, since its January, 2005, indication of an intent to renew the policy. Because of these differences, Badger's acceptance of late, interim installment payments does not mean it is estopped from requiring a timely initial payment on renewal. Sitto had always made timely renewal payments. Thus, Badger was not estopped from requiring at a minimum the initial installment payment by April 16, 2005.

Sitto's case is significantly different from the insured's case in Morales. In Morales, the last few communications from the insurer to the insured contained assurances that the policy would remain in effect, and it was unclear whether the insured had received a previously sent cancellation notice. Here, Sitto admits that the last two letters from Badger stated that the failure to make a renewal payment by April 16, 2005, would result in no coverage beyond that date. Despite these clear warnings, Sitto did not make a timely renewal payment.

12

After setting the insurance renewal bill aside, Kinaya did not notice it until April 18, 2005, after the policy had already expired.  Then, Kinaya failed to ensure that the payment was in the mail until April 21, 2005.  Kinaya was careless.  While unfortunate, Badger is not obligated to rectify the error by extending coverage beyond the life of the policy.

### C.  Conclusion.

For the reasons stated above, defendant's motion for summary judgment is GRANTED.

SO ORDERED.


Dated:  February 9, 2006              s/Avern Cohn_____
                                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 9, 2006, by electronic and/or ordinary mail.

                                       s/Julie Owens_____
                                      Case Manager
                                      (313) 234-5160

13