UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SITTO ENTERPRISES, INC.,
d/b/a WOODWARD & PALMER,
and NAZAR KINAYA a/k/a NEIL
KINAYA,

    Plaintiffs,

v.                                                                                    Case No. 05-72893

BADGER MUTUAL                                                 HONORABLE AVERN COHN
INSURANCE COMPANY,

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING
PLAINTIFFS' MOTION FOR RECONSIDERATION**

**I. Introduction.**

This is a breach of an insurance policy case. Sitto Enterprises, Inc. (Sitto) and Nazar Kinaya (Kinaya) claim that defendant Badger Mutual Insurance Company (Badger) has failed to pay for a loss resulting from fire damage to real and personal property owned by Sitto[1] as provided under a policy issued by Badger.

On February 9, 2006, the Court granted defendant's motion for summary judgment, finding that no insurance policy was in effect at the time of Sitto's loss because Sitto paid the initial installment payment on renewal late, and that Badger was not equitably estopped from denying insurance coverage because it had accepted late interim installment payments previously, since it never had accepted late initial

---

[1] Kinaya is apparently the sole stockholder of Sitto. All references will be to Sitto.

installment payments. Sitto filed a timely motion for reconsideration.[2] For the following reasons, the motion will be denied.

## II. Background.[3]

The factual background is laid out in detail in the Court's Order of February 9, 2006. A summary follows; new facts will be listed separately.

Sitto first took out a policy in 2000 with Badger insuring real and personal property, a liquor and convenience store, in Detroit, Michigan. This policy was effective from April 16, 2000, to April 16, 2001. The policy was renewed in 2001 and subsequent years, and continued in effect through 12:01 a.m. on April 16, 2005.

Under each policy, Sitto was required to pay the entire annual premium at renewal or on an installment basis during the year.[4] If not paying the entire amount up front, Sitto needed to make the initial installment payment on renewal on time to extend coverage another year. Sitto never paid the initial installment payment on a renewal policy after the due date. However, due to Badger's billing practices, Sitto never had to pay the initial installment by April 16 of each year. The annual initial installment payment due date was not always the 16th of April. Rather, Badger gave renewing

---

[2] In its motion, Sitto requested permission to supplement the record. Sitto had retained new counsel at this time. The Court issued an order giving Sitto more time to file additional papers and an updated motion, and ordered defendant to respond to the motion. With each party having done so, the motion for reconsideration is ripe for decision.

[3] The background is gleaned from the parties' papers.

[4] A policyholder had the option of paying in full up front, or making installment payments throughout the year. Plaintiffs always chose the five-installment payment plan.

policyholders 11 days to make the initial installment payment from the time it sent a Renewal Reminder Notice, which it sent at varied times.

In January, 2005, Badger sent Sitto's agent a Commercial Renewal Information Form. Sitto was to complete the form and return it to Badger if Sitto wanted to renew the policy. On January 25, 2006, Sitto's agent faxed a completed form to Badger indicating Sitto's intent to renew the policy with the same coverage as the prior year. In late March or early April, 2005, Sitto received a Commercial Renewal Information Form from Badger and noticed that the yearly premium had increased $2,000. The document warned that the policy would expire on April 16, 2005, unless Badger received at least the initial installment payment by April 15, 2005. Kinaya says he called his agent about the premium increase; the agent said he would look into it. Kinaya then set the bill aside.

Badger sent Sitto a Renewal Reminder Notice on April 5, 2005, which warned that "ALL COVERAGE WILL END" unless payment was received on or before April 16, 2005.

On April 18, 2005, Kinaya realized that his agent had not called back about the premium increase. He decided to make the initial installment payment. Kinaya wrote the check and placed it in a pile for mail pickup. On April 21, 2005, Kinaya noticed that the pile of mail had not been picked up, so he took it to the post office to be mailed.

Badger received the initial installment payment on April 25, 2005. In the early morning hours of April 26, 2005, a fire destroyed the insured real and personal property. Kinaya reported the fire to Badger at an unknown date. Also on April 26, 2005, Badger sent a letter to Sitto returning the initial installment payment and stating that the failure

3

to renew the policy prior to its expiration date caused the policy to expire on April 16, 2005.  On or about May 25, 2005, Badger denied Sitto's claim.

Plaintiffs filed suit on July 22, 2005.

### B. Additional Facts.

**1.**

Sitto's expert report states that, under insurance industry practice, the insurance policy for the 2005-2006 policy year was renewed in January, 2005, when Badger sent and Sitto's agent faxed back to Badger the Commercial Renewal Information Form.  Sitto says that upon completion of the contract the policy cancellation process needed to be followed.  An email from Sitto's agent to another agent on April 7, 2005, indicates that the agent did not think the policy was renewed because the payment had not been made.

**2.**

For the first time, Sitto says it never received the Renewal Reminder Notice in early April, 2005, which it had received in previous years.  The April 7, 2005, email shows that Sitto's agent knew the payment was due even though Sitto did not receive the Renewal Reminder Notice.

**3.**

The expert report says Badger overcharged Sitto for insurance, and the overcharges should be applied to the unpaid premium to extend coverage.  The building size impacts the premium for premises liability coverage.  In 2000, the initial policy was issued based on a building of 3,600 square feet, 2,000 of which was open to the public,

and 1,600 of which was storage.  Badger sent out an inspector in April, 2000, to measure the building.  The inspector determined that the building was 5,732 square feet based on a 1947 drawing of the building.

Based on the inspector's report, a Badger underwriter amended the policy to reflect the 5,700 square feet area.  The underwriter listed 3,700 as open to the public, and 2,000 for storage.  In 2003, a Badger inspector again determined that the building was about 5,700 square feet.  In August, 2004, a Badger claims adjuster wrote a memo to Badger stating that the building was 4,360 square feet.  Despite this information, the underwriter prepared the 2005-2006 insurance policy using the 5,700 square feet figure.

Badger's expert report states that the premises liability coverage premium was based on more than just the square footage, that Badger notified Sitto's agent in June, 2000, that the premium was being increased based on the 5,700 square foot estimate, and that neither Sitto nor its agent ever objected to the square footage listed in the policy, even though other changes were made to the policy.

Kinaya says the building was larger when he bought it in the 1980s, and that he removed part of it to create parking spaces before 2000.  Kinaya says the building is about 4,125 square feet, with about 2,125 as open space and about 2,000 for storage.

Part of the total premium is based on the amount of property coverage.  Sitto says Badger's policy restricts recovery to Actual Cash Value (ACV), even when the policy limits are higher.  In 2000, Badger's inspector told Badger that the ACV for the building was $72,600.  Despite this, Badger charged, and Sitto paid, premiums on an insurance policy covering up to $150,000 for the store each year for five years. Badger's expert report says Sitto's agent requested $150,000 in ACV coverage.  While

investigating a property damage claim in August, 2004, Badger's expert says a Badger claims adjuster requested a coverage review because he thought the property was under insured. During the coverage review, Sitto's agent questioned the square footage, and Badger reported that its records reflected a 5,732 square foot building. In late 2004, Sitto's agent responded only by requesting an increase in ACV coverage to $250,000.

Part of the total premium is based on the level of products liability coverage based, in part, on the insured's gross sales figure. In 2000, Badger estimated a gross sales figure for Sitto of $624,000. In 2005 the estimate was $831,000, despite the fact that actual sales had dropped from about $600,000 in 2000 to about $435,000 in 2004-2005. Badger's expert report says the premium charged for products liability coverage was the minimum rate charged.

The installment payments were "deposit premiums" which triggered a provision in the insurance policy obligating Badger to audit the insurance policy annually. Badger never conducted audits to determine whether Sitto was paying the proper premium. An audit would have determined whether Badger owed Sitto a refund, or Sitto owed Badger more, for the past year's coverage.

As a result of Badger's failure to audit the insurance policy and faulty underwriting practices, Sitto says Badger wrongfully collected at least $3,000 in premium payments from Sitto, and that money was more than enough to pay the 2005 initial installment payment of $1,816.

### III. Discussion.

#### A. Legal Standard.

A motion to alter or amend judgment under Fed. R. Civ. Proc. 59(e) must be filed no later than 10 days after entry of judgment. Though the Court's discretion is not restricted, under E.D. Mich LR 7.1(g)(3), a motion for reconsideration will not be granted if it "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case."

### B. Analysis.

#### 1. Introduction.

The Court is satisfied that Sitto meets the legal standard for a motion for reconsideration, and will consider Sitto's arguments. Sitto makes three arguments as to why the Court should reconsider its order and deny summary judgment[5] to Badger: (1) the 2005-2006 insurance policy was renewed when Sitto accepted Badger's "offer" of coverage on January 24, 2005; (2) equitable estoppel should apply because an issue of fact exists as to whether Sitto received the Renewal Reminder Notice; and (3) Badger overcharged, and Sitto overpaid, insurance premiums during the prior five years, the excess of which was more than enough to cover the initial installment payment owed in April, 2005, to extend the policy for another year.

#### 2. Whether a Valid Insurance Policy Existed.

##### a. Argument.

---

[5] Sitto also asks that summary judgment be granted in its favor, and moves to amend the complaint based on the additional facts now before the Court.

Sitto cites an insurance industry expert's opinion, set forth in an affidavit, to support its position that, according to insurance industry custom, the 2005-2006 insurance policy was renewed when Sitto accepted Badger's offer of coverage when Sitto's agent signed and faxed the Commercial Renewal Information Form to Badger on January 25, 2005.  Once Sitto and Badger agreed on a new insurance policy, Sitto says, Badger was required to cancel the policy in accordance with the policy's cancellation provisions.

Badger says Sitto's argument mis-characterizes the form Sitto completed and faxed to Badger.  Badger says the Sitto's expert ignores the title of form: "Commercial Renewal Information Form."  Badger says this form is not an offer to renew coverage, but simply seeks information to determine whether an insured is interested in renewing coverage and what changes to the policy are desired.  Badger says the "offer" to renew is made in the "Commercial Package Renewal Notice," and the offer is not considered to be accepted until it receives the initial installment payment.

### b. Resolution.

A contract to renew the 2005-2006 insurance policy was not created in January, 2005, when Sitto faxed the Commercial Renewal Information Form to Badger.  A valid contract requires offer, acceptance, and consideration.  Sitto did not make a timely payment, thus it paid nothing to renew the insurance policy.  Sitto's expert report does not speak to the lack of consideration.  The April 7, 2005 email from Sitto's agent confirms the agents did not think the policy was already in effect.  Moreover, an insurance policy certainly would not be formed if an insured requested changes in coverage when returning the Commercial Renewal Information Form.  The motion for

reconsideration on this issue must be denied.

### 3. Whether Equitable Estoppel Should Apply if Sitto Never Received the Renewal Reminder Notice.

#### a. Argument.

Badger's practice of setting a new initial installment payment due date for eleven days after sending Renewal Reminder Notice, regardless of whether the new due date is after the previous policy had expired, was important in the grant of summary judgment to Badger. The Court found that Sitto had always paid the initial installment by the due date included in the Renewal Reminder Notice, even though Sitto did not always paid the initial installment before the previous policy had expired. In April, 2005, the Renewal Reminder Notice required payment by the same date the previous policy expired (April 16, 2005). The Court ruled that Badger was not estopped from requiring the initial installment payment to have been received by April 16, 2005, to continue coverage.

Sitto now says it never received the April, 2005, Renewal Reminder Notice which set the April 16, 2005, payment deadline. Sitto says this creates an issue of fact for a jury to decide, as the burden is on Badger to prove that the notice was sent. Finch v. Monumental Life Ins. Co., 820 F.2d 1426 (6th Cir. 1987). Sitto says that even if Badger proves that it had placed the notice with proper postage and address in the mail, this would create only a presumption of receipt which can be rebutted with evidence that it was not received. Barstow v. Federal Life Ins., 259 Mich. 125, 129 (1932). Sitto says a previous notice requiring payment by April 15, 2005, was meaningless because of Badger's past practice of modifying the due date based on when the Renewal Reminder

9

Notice was mailed.

Sitto says its the failure to receive the Renewal Reminder Notice induced it into believing that the policy was still in effect, that it relied on the Renewal Reminder Notice to know when to make the payment, and that such reliance was reasonable.

Badger concedes that a question of fact now exists as to whether Sitto received the Renewal Reminder Notice. But, Badger says, nothing shows that Sitto justifiably relied on waiting for the Renewal Reminder Notice before making the initial installment payment. Badger says that Finch was interpreting Tennessee law and involved a life insurance policy which continued until the death of the insured unless premium payments were not made. The policy in this case is governed by Michigan law and involves the expiration of a year long business insurance policy. Badger also notes that Sitto did receive the Commercial Package Renewal Notice, because Sitto returned the bottom of it when sending in the late payment, and this notice said the initial installment payment was due by April 15, 2005. Badger also notes that the April 7, 2005, email between Sitto's two insurance agents[6] proves they were aware that Sitto had not paid the initial installment and that the payment was due by April 15, 2005.[7] Badger says it cannot be liable for the failure of Sitto's agents to ensure that Sitto knew the consequences of not making the payment on time, and that the agents were

---

[6] Badger says both are independent agents and considered agents of the insured under Michigan law. Harwood v. Auto Owners Ins. Co., 211 Mich. App. 249, 254 (1995).

[7] In an April 14, 2004, email, Sitto's agent recognized that Badger would not write the policy if the initial installment payment was not received on time because Badger no longer wrote this type of policy. This explanation mirrors the reason Badger gave for rejecting the late initial installment payment in April, 2005.

10

responsible for ensuring that Sitto made a timely payment.  Badger notes that Sitto's first explanation for failing to make a timely payment was that it was waiting for the insurance agent to explain why the premium had increased.  But now Sitto says it never received the Renewal Reminder Notice.  Badger says Sitto's reliance on the missing Renewal Reminder Notice to delay payment was unreasonable and unjustified.

### b.  Resolution.

The Court relied on Morales v. Auto Owners Ins. Co. in deciding that Sitto did not justifiably rely on Badger's past acceptance of late interim installment payments when sending in a late initial installment payment.  458 Mich. 288 (1998)  In Morales it was unclear whether the plaintiff had received the cancellation notice and the plaintiff had received conflicting notices from defendant as to the continuation of coverage.  Here there is only the acknowledged receipt of the Commercial Package Renewal Notice informing Sitto that the initial installment payment was due on April 15, 2005.  Sitto says it was waiting for the Renewal Reminder Notice, which had, in years past, amended the initial installment payment due date, before making a payment.  But Sitto says the Renewal Reminder Notice was never received, meaning there was no reason to think that the initial installment payment due date was different from that included in the prior notice.  It was unreasonable for Sitto not to make the initial installment payment on time because Sitto had received the Commercial Package Renewal Notice and the agents knew about the impending deadline.  In stating that he did not receive the Renewal Reminder Notice, Kinaya says in an affidavit that he made great efforts to keep up on the mail.  If true, he must have known of the deadline, and ignoring the deadline was unreasonable.  The motion for reconsideration again must be denied.

### 4. Application of Sitto's Past Overpayments to the Late Renewal Installment Payment.

### a. Argument.

Sitto says the policy obligated Badger to perform audits and either bill or reimburse Sitto for the difference, if any, between the amount paid and the amount owed for the prior year's insurance coverage. Sitto says Badger never did an audit. Sitto says Badger's premium was excessive based on the actual size of the building (premises liability coverage), the store's gross sales (products liability coverage), and the insured ACV (property coverage). Sitto says that when an insured makes overpayments, the insurer must apply the excess funds to any unpaid premiums. Clifford v. Catholic Mutual Benefit Ass'n., 208 Mich. 448 (1919) (a life insurance policy beneficiary recovered under a policy in which the insurer had overcharged the insured despite the fact that the insured had failed to pay a premium on the policy). Sitto says that Badger's failure to audit the policy and the collection of a premium for which there was no risk[8] meant Badger collected more than $3,000 in excess premium payments over the five years Badger insured Sitto.

Badger says the principle that lack of payment cannot cause an insurance policy to be forfeited if the insurer possesses unearned premiums from the insured only applies if the insurer has "a fund absolutely due and payable to the insured." Chayer v. Metro. Life Ins. Co., 272 Mich. 652, 657 (1935). Badger says Sitto has not established that Badger possessed "funds absolutely due and payable" to Sitto. Badger says the

---

[8] Sitto's expert report attests how, why, and how much Badger had overcharged Sitto over the years based on an analysis of the insurance policy.

alleged overcharge for products liability coverage is based on the false assumption that the premium was dependant on Sitto's yearly sales.  Badger says the products liability premium charge was the minimum charged by Badger to retail wine and liquor store merchants, thus any audit would have been inconsequential.

Badger says premises liability coverage is based on more than just the square footage of the building, and includes: the nature and location of the risk; the property's condition; security features; the insured's loss history; the business's stability; and the duration of the relationship with the insured.  Badger says the premises liability coverage premium is a combination of formulas, an underwriter's discretion, and a calculation of what is a competitive amount in the market.  Badger's expert concludes that a reduction of one factor may not mean a lower premium would have been charged.

Badger says Sitto's claims about the premium charged for the ACV ignores the fact that Sitto requested this level and type of property coverage.  Property coverage can be based on replacement cost or ACV.  Sitto initially requested replacement cost coverage with a policy limit of $250,000 in April, 2000.  After receiving a quote, Sitto's agent requested ACV coverage in the amount of $150,000.  In January, 2001, Sitto requested that the property coverage be increased two percent; Badger increased the coverage to $153,000.  In October, 2004, Sitto's agent requested that ACV property coverage be increased to $250,00.

Badger says Sitto never objected to the premium charged, the methods Badger used to calculate its premium, or the square footage estimate used over five years.  Badger says that after telling Sitto's agent that records indicated a 5,732 square foot

building, the agent's only response was to increase the ACV property coverage. Badger says Sitto's acquiescence distinguishes this case from Clifford where the widow-beneficiary of the life insurance policy had repeatedly objected to the excess premium without success, and the court ruled she was justified in continuing to pay the overcharges instead of risking loss of the policy.

Sitto replies that at least $2,500 of the more than $3,000 in alleged overcharges come from the incorrect square footage in the policy. Comparing the estimated premises liability coverage premium when the building was listed as 3,600 square feet (2,000 public and 1,600 storage) to the policy listing the building as 5,700 square feet (3,700 public and 2,000 storage), the premiums for both the public and storage space went up proportionally with the increased amount of space (85% increase in public, 25% increase in storage). Sitto says Badger improperly places the burden on Sitto, not its inspector's flawed report or the failure to audit the policy. Sitto says the overcharges were "due and payable" at least by the end of the policy year, if not before, meaning the overcharges should have been applied to its unpaid initial installment payment. Alternatively, Sitto says a question of fact exists as to whether the overcharges were "due and payable," thus precluding summary judgment.

### b. Resolution.

Conflicting expert reports make it a disputed issue of material fact whether Badger overcharged Sitto. Even so, it is not clear that Badger overcharged Sitto and had excess premium payments to apply to the unpaid initial installment payment. But if it did, Sitto's remedy is a separate claim for the overpayments, not a claim extending coverage of the policy. Sitto did not think Badger had money from previous

overcharging and neither did Badger, meaning neither party thought Sitto would be reimbursed. Sitto never objected to the premiums it paid over the years. Sitto did request an increase in building coverage to $250,000 in late 2004.

Sitto relies greatly on Badger's failure to perform an audit. But there is no proof that an audit would have resulted in a reimbursement or an increased charge to Sitto given the multiple factors considered to calculate an insurance premium. Neither Sitto nor its agent ever requested an audit. It is unclear whether Badger had any extra money from Sitto, let alone enough to cover the unpaid initial installment payment in April, 2005.[9]

If Badger performed an audit at the end of the 2004-2005 policy year, it would not have been complete until after the initial installment payment was due, meaning Sitto would not have had any credit with Badger. Had Badger performed audits in prior years, it is unclear whether Sitto would have received a refund, and if it had, the funds would not have been there to apply to the 2005 initial installment payment. Sitto can not get around the fact that it made the initial installment payment late.

Finally, it is not clear from the record that the mistakes in the insurance premiums charged were a function of the failure to audit the policy, or the insurance agents' failure to submit accurate figures to Badger. In renewing the policy each year for five years, Badger asked Sitto whether there were any changes required in its coverage. Badger made each requested change.

---

[9] Even if Badger and Sitto knew that Sitto had a credit coming to it at some point, by not paying a bill in reliance on the future credit, Sitto would still run some risk of lapsed or discontinued coverage.

It is, therefore, undisputed that neither Badger nor Sitto thought Badger owed Sitto any refund in April, 2005, that could have been applied to the payment due. Sitto simply paid the initial installment late. The motion for reconsideration is denied.

### C. Conclusion.

The motion for reconsideration is DENIED.

SO ORDERED.


Dated: April 11, 2006
      s/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 11, 2006, by electronic and/or ordinary mail.

      s/Julie Owens
      Case Manager
      (313) 234-5160